<pre>
 1                UNITED STATES BANKRUPTCY COURT
                  EASTERN DISTRICT OF NEW YORK
 2

 3

In re:                      .   Central Islip, New York
 4                          .   June 9, 2009
ELEMCO TESTING COMPANY, INC..
 5
AND ELEMCO INDUSTRIES, INC.,.   08-76561
 6          Debtors.        .   Calendar Time:
. . . . . . . . . . . . . .     9:30 A.M.
 7

 8
          MOTION FOR AUTHORITY TO OBTAIN CREDIT UNDER
 9          SECTION 364(b), RULE 4001(c) OR (d) [135]

10     MOTION TO EXTEND EXCLUSIVITY PERIOD FOR FILING A
            CHAPTER 11 PLAN AND DISCLOSURE STATEMENT
11

12              BEFORE HONORABLE ALAN S. TRUST

13

14
Attorney for the Debtors:    RATTET, PASTERNAK & GORDON
15                           OLIVER, LLP
                             800 Mamaroneck Avenue
16                           Harrison, New York  10528
                             BY:  JULIE A. CVEK, ESQ.
17

18
Attorney for United States
Trustee:                     OFFICE OF UNITED STATES TRUSTEE
19                           560 Federal Plaza
                             Central Islip, New York
20                           BY:  ALFRED DIMINO, ESQ.

21
Attorney for Suffolk County
National Bank:               BALFE & HOLLAND, PC
22                           135 Pinelawn Road
                             Suite 125 North
23                           Melville, New York  11747
                             BY:  KEVIN E. BALFE, ESQ.
24

25
</pre>

```
 1                                                    2

 2

 3  Attorney for Electrical
    Industry Board of Nassau
 4  and Suffolk County:         PAYKIN MAHON ROONEY & KRIEG, LLP
                                185 Madison Avenue
 5                              New York, New York  10016
                                BY:  JAMES J. MAHON, ESQ.
 6
    Attorney Local 25 IBEW:     LAW OFFICE OF RICHARD S. BROOK
 7                              114 Old Country Road
                                Suite 250
 8                              Mineola, New York  11501
                                BY:  PATRICIA E. PALMERI, ESQ.
 9
    Attorney for State University
10  of New York at Stony Brook: HON. ANDREW M. CUOMO
                                OFFICE OF THE ATTORNEY GENERAL
11                              STATE OF NEW YORK
                                300 Motor Parkway
12                              Hauppauge, New York  11788
                                BY:  SUSAN MEDEIROS CONNOLLY,
13                              ESQ.

14  Attorney for Utica Mutual
    Insurance Company:          TORRE, LENTZ, GAMELL, GARY &
15                              RITTMASTER, LLP
                                100 Jericho Quadrangle
16                              Suite 309
                                Jericho, New York  11753
17                              BY:  PATRICIA A. WAGER, ESQ.

18  Attorney for Creditors
    Committee:                  PLATZER, SWERGOLD, KARLIN,
19                         LEVINE, GOLDBERG & JASLOW, PC
                                1065 Avenue of the Americas
20                              New York, New York  10018
                                BY:  MITCHELL A. KAPLAN, ESQ.

21

22
    Court Recorder Operator:    BARBARA BRAUNSDORF
23

24

25
```

1                                                                          3

2

Court Transcriber:          CATHERINE ALDRICH
                            COMPU-SCRIBE, INC.
4                           2376 Cleveland Street
                            Bellmore, New York  11710
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22 Proceedings recorded by electronic sound recording,
transcript produced by transcription service

23

24

25

1          MS. CVEK:  Good morning, Judge.  Thank you for your

2    patience and accommodating everyone's traveling to Court in

3    this temperamental weather.

4          THE COURT:  We noticed it was raining, so we're glad

5    everyone got here safely.

6          MS. CVEK:  Julie A. Cvek of Rattet Pasternak &

7    Gordon Oliver for the Chapter 11 debtors.

8          THE CLERK:  Calling case numbers 1 and 2, case

9    number 08-76561, Elemco Testing Company, Inc.

10          THE COURT:  I'll take appearances, please, first in

11    the courtroom.

12          MS. CVEK:  Julie A. --

13          MR. DIMINO:  Good morning, Judge.  Alfred Dimino

14    from the Office of the U.S. Trustee.

15          MS. CVEK:  Julie A. Cvek of Rattet Pasternak &

16    Gordon Oliver for the Chapter 11 debtors.

17          MR. BALFE:  Good morning, your Honor.  Kevin Balfe,

18    Balfe & Holland, attorneys for Suffolk County National Bank.

19          MR. MAHON:  Good morning, your Honor.  James Mahon

20    for --

21          THE CLERK:  Speak into a microphone.

22          MR. MAHON:  James Mahon, M A H O N, for Electrical

23    Industry Board of Nassau and Suffolk County.

24          MS. PALMERI:  Good morning, your Honor.  Patricia E.

25    Palmeri from the Law Office of Richard S. Brook for Local 25

1  IBEW.

2          MS. CONNOLLY:  Good morning, your Honor.  Susan

3  Medeiros Connolly, Assistant Attorney General on behalf of the

4  State University of New York at Stony Brook.

5          MS. WAGER:  Good morning.  Patricia Wager of Torre,

6  Lentz, Gamell, Gary & Rittmaster for Utica Mutual Insurance

7  Company.

8          MR. KAPLAN:  Good morning, your Honor.  Mitchell

9  Kaplan from Platzer, Swergold, counsel for the Creditors

10  Committee.

11          THE COURT:  All right.  Ms. Cvek, we have this

12  morning the interim hearing on the debtor's motion to obtain

13  DIP financing, the objection of Utica Mutual.

14          Can you tell me where you all stand on efforts to

15  resolve the objection?

16          MS. CVEK:  Your Honor, I have spoken with counsel to

17  Suffolk County National Bank, as well as counsel to the

18  Creditors Committee and counsel to Utica, and I believe we are

19  all on the same page with respect to resolving the interim

20  order, as well as a final order in accordance with Utica's

21  objection.  We will be circulating a revised interim order and

22  submitting a final order on our adjourn date reflecting

23  language that would resolve Utica's objection.

24          In addition, your Honor, although the committee has

25  not filed a formal objection, they had conveyed some concerns

1  regarding some language in the proposed interim, and I guess

2  the final order as well, that they would like to have

3  included, and I'll let Mr. Kaplan address the Court on his

4  issues, but the debtor does not have any objections to that

5  language as well, and I believe that the bank does not have

6  any objections either.

7          THE COURT:  All right.  Then why don't we go first

8  to Ms. Wager, is it?

9          MS. WAGER:  That's correct.  Thank you.

10          Essentially what Utica is looking for is a carve-out

11  essentially to -- we are going to end up having to pay some

12  obligations to either and/or the union and/or various

13  subcontractors.  We do not have labor and material claims at

14  this point.  We're just dealing with the union, and all we

15  want to make sure is when the bank has pledged all assets and

16  all receivables that Utica Mutual gets its funds returned

17  first, and so it's essentially an Article 3(a) of the lien law

18  protection, and that we've already agreed with Julie in the

19  cash collateral order to carve it out, and I think we can do

20  it again.

21          THE COURT:  So that the -- if the Court approves the

22  DIP financing, then the post-petition lien to Suffolk County

23  National Bank would be behind the lien carved out for the

24  benefit of Utica in the prior agreement with Utica?

25          MS. WAGER:  That's correct.

1        THE COURT:  Mr. Balfe.

2        MR. BALFE:  Your Honor, I believe that's essentially

3 true.  There's a few I guess logistical items I guess that Ms.

4 Wager and I started to discuss this morning.  For example, on

5 Testing I believe we just said is accurate.  On the two other

6 entities, I don't believe those two other entities have any

7 payroll or any employees.  I believe that Testing is the only

8 entity that has employees.

9        So it may just be a little bit -- I understand what

10 Ms. Wager is saying.  I really don't have an issue what she's

11 saying.  There may just be a couple of logistical issues to be

12 discussed in terms of the language for the order itself, and I

13 believe we'll be able to work that out.

14        THE COURT:  All right.  Then Mr. Kaplan.

15        MR. KAPLAN:  Thank you, your Honor.  The committee's

16 comments to the proposed order DIP order were relatively

17 minor, your Honor.  It ranged from things such as the payment

18 of fees to the bank's counsel that we just want a reasonable

19 period of time to object, and if there's no objection then

20 that's fine.  That apparently is okay with the debtor's

21 counsel, and I believe with the bank's counsel.

22        We also just wanted some clarifications in terms of

23 the life insurance policy that's being pledged as an asset,

24 just an approximation as to what that asset is worth and what

25 the estate is actually giving up.

1    In terms of the budget, the committee is basically

2  okay with it.  We note in the budget that for all

3  professionals there is approximately $2,000 per week that's

4  being budgeted.  Given the fees that have been allowed by your

5  Honor to date, subject to an agreement on when they should be

6  paid and the costs of all the professionals going forward, we

7  think that that might be slightly insufficient, but we're

8  hoping to resolve that without any problem with the debtor's

9  counsel and the bank's counsel.

10    THE COURT:  All right.  Thank you, Mr. Kaplan.

11    So then for interim purposes, and then I'll hear

12  from the other parties present if there are substantive

13  objections to the interim use.

14    MS. CVEK:  Your Honor, if I could just add one other

15  additional comment?  Although the union and SUNY Stony Brook

16  had not filed formal objections, they did indicate that they

17  wanted clarification in the interim, as well as final order,

18  that the standby letters of credit should be irrevocable.

19    Upon my further discussions with them, I did suggest

20  that they do have a termination date of either one of two

21  events, one being a sale of the debtor's assets pursuant to

22  Section 363 of the Bankruptcy Code, or a conversion of the

23  debtor's Chapter 11 proceedings to a Chapter 7 proceeding.

24    In addition, that there would be a default notice

25  provision that should either Local 25 or SUNY Stony Brook hold

1   the debtor in default that they would have to come to the

2   Court.  I have not discussed the length of the notice, the

3   default notice provision, but I'm sure it will be between five

4   and ten days, and that language will be reflected in an

5   interim and a final order as well.

6           THE COURT:  All right.  Then, Mr. Kaplan.  I'm

7   sorry.  Mr. Mahon.

8           MR. MAHON:  Yes, your Honor.  We also were --

9           THE CLERK:  Please step over.

10          MR. MAHON:  Sorry.  We also were anxious that the

11  letter of credit be irrevocable.  The language as in the

12  motion was somewhat ambiguous.  Other than that --

13          THE COURT:  All right.  But -- sorry.

14          MR. MAHON:  Other than that, we're comfortable with

15  the proposed proposal, but the language of the letter of

16  credit I think needs some articulation.

17          THE COURT:  And is it consistent with the current

18  discussions that the letters -- the letter or letters of

19  credit will be irrevocable until some agreed triggering event,

20  such as an asset sale or conversion of the case, and that

21  there will be a notice provision, an opportunity for cure

22  before the letters are drawn?

23          MR. MAHON:  Well, I would assume that if there's a

24  triggering event then the letter becomes collectible.  I mean

25  if there's -- if the Chapter 11 were to become a Chapter 7, I

1  would certainly want to make certain that our funds are
2  protected.
3          THE COURT:  Well, what I think I'm hearing though
4  are different, and maybe I'm mishearing.  I hear the debtor --
5  I thought I heard the debtor say that they wanted the letters
6  of credit to be terminable in the event that the assets are
7  sold or the case is converted.  I think I hear you saying you
8  want that to be a triggering event to draw the letters.
9          MR. MAHON:  Well, your Honor, the whole concept of
10 having a letter of credit is in lieu of a cash bond.  At least
11 that's my understanding, and what we're trying -- what I
12 thought we were trying to do here was dispense at least in
13 this limited case with the obligation that the debtor has to
14 have, you know, real bonding authority, which thus far they
15 have not been able to procure.
16         It would seem to me that it would be somewhat
17 illusory if in fact the Chapter 11 fails that the funds,
18 whether they be left unprotected.  I mean, you know, that
19 raises the whole issue that we've been speaking about on a
20 number of occasions before the Court where we are right now
21 find ourselves in the position of being a reluctant funder of
22 this Chapter 11.
23         You know, right now, and I'm going to say this, my -
24 - I've been informed by the union that they're going to be
25 send out another notice to pull the men because they once

again, everything is late, and it's under those circumstances
that we require at least the minimal protection of an
irrevocable letter of credit that will become payable if in
fact this chapter fails.  Otherwise, I don't understand the
reason for having it.

THE COURT:  All right.  Well, let me see -- let me
hear from the debtor if I misheard what the discussed term
was.

MS. CVEK:  Your Honor, I understand Mr. Mahon's
concerns, and taking that into consideration perhaps I'll
suggest that the termination's only upon a sale, presuming
that a sale would make whole any outstanding benefits since
there would administrative claims and priority claims for the
pre-petition portion.

THE COURT:  All right.  Then, Ms. Palmeri, where is
your Local 25 on this?

MS. PALMERI:  Well, I certainly concern with Mr.
Mahon.

THE CLERK:  Please lean forward.

MS. PALMERI:  Oh, I'm sorry.  I certainly concur
with Mr. Mahon, but there is already -- there will be in the
event that the 401(k) payments do not -- are not received
today, there will be another 72-hour notice that will go out
at the end of today, but there was one that was sent out on
Friday that will be -- could be invoked as of tomorrow if the

prior fringe benefits that were due on Friday are not paid as of tomorrow.

So there already is a outstanding 72-hour notice for once again being late on fringe benefit payments.

THE COURT: All right. Ms. Connolly, does the State of New York have a dog in this hunt?

MS. CONNOLLY: We have a smaller dog, your Honor, than certainly the unions do. Obviously we would like that the letters of credit to be irrevocable as well in order to protect the university. I don't have a problem with there being a notice requirement in the case of default.

Obviously I am concerned with the idea that the union workers might be getting pulled off of jobs as a result of the 72-hour notice, which is why as I'm sitting here I'm thinking that the notice provision should be shorter rather than longer, more like 36 or 48 hours in order to enable us to come to Court to invoke that letter of credit in case we need to get workers on the job in -- at University Hospital to finish whatever work is ongoing.

Beyond that, you know, I don't have a problem with the notice requirement. I would just like it to be reasonable in case of a circumstance where suddenly the workers are pulled off the job and we're left standing without anybody to complete work let's say on elevators in the hospital or something like that where there would be kind of an exigent

circumstance. That's my main concern.

THE COURT: Mr. Dimino, any position of your office on the DIP?

MR. DIMINO: Judge, thank you. Alfred Dimino from the Office of the U.S. Trustee.

I think it's clear that the debtor needs financing. I mean it cannot continue to operate in the fashion that it has since the filing and probably before the filing. What the letter of credit, if I understand it correctly, is going to do is to give comfort to the union and the State of New York that in the event that it has a shortfall, they have a source of funds in order to be able to collect.

Obviously if it's revocable, I don't believe that it serves a purpose that it's supposed to serve. If in fact the debtor at some point should either cease doing business by sale or otherwise and there are no monies post-petition owed to the unions, then there's no need to draw on the letter because they will have been current, but that's there to protect them, and I think it's part of the agreement they had, whether it be by bond or by letter of credit that there be some assurances of those payments so they know going forward that they will not be in a worse position than they are today.

So based upon that, we would support the borrowing, and believe that it should be irrevocable.

THE COURT: Ms. Cvek, how much of the -- it sounds

1 that there is -- it's hart to put percentages on this, but it

2 sounds to the Court that there is substantial agreement, but

3 not complete agreement yet on this, and this seems to be

4 something of a web.  I fear that if you hit it anywhere it

5 tingles everywhere.

6       What -- from a timing standpoint how much money does

7 the debtor need to borrow to make it through to our next

8 hearing on June 24th, because this is just an interim hearing,

9 and what is the timing for posting of the letters of credit,

10 because to the extent that you all reach different

11 accommodations on the letter of credit than is proposed in the

12 order, I don't know who else -- we may go round robin and

13 people have, "but then, but if, but then," so when does the

14 debtor expect to need to post the letters of credit, and how

15 much money does it need to make to get to June 24th?

16       MS. CVEK:  Your Honor, of the $200,000 DIP financing

17 that Suffolk County National Bank has, is proposing to provide

18 to the debtors 50,000 of that as earmarked for the debtor's

19 operations to assist them with their cash flow, including

20 making 401(k) and fringe contributions to Local 5, as well as

21 the Joint Industry Board and to other unions.

22       We have not discussed when the timing with respect

23 to the letters of credit, but I believe it's the debtor's

24 position that the very minimum the 50,000 is needed to prevent

25 any further 72-hour notices, first to pay off any outstanding

fringe and 401(k) benefits to Local 5 and to prevent any other

42-hour -- 72-hour notices from going out.

I have not spoken with Suffolk County, with SUNY

Stony Brook, or the union with respect to the timing of the

letters of credit, when they would need to be in effect.  I

suppose that they can make a representation to the Court as to

the exigency of whether they need to be in place at today's

hearing or if it's more proper to have them in place for the

final hearing.

THE COURT:  All right.  But the $50,000 is what the

debtor needs to get from here until June 24th?

MS. CVEK:  Yes, your Honor.

THE COURT:  All right.  Then let me do this.  Let me

-- I've got a number of lawyers coming in at 11:00 o'clock for

another matter.  Let me give you all about another half hour

to visit and see if you can iron out some of these wrinkles in

the agreement.

Again, it's not necessary that you all reach

ultimate final agreement because I'm only going to authorize

interim use today anyway.  That's all that the statute

permits, but to see if you all can get on the same page on the

terms and the conditions of the $50,000 that the debtor needs

to make it until June 24th, and then see what portion of these

issues can be deferred for further negotiations for the Court

to then decide on June 24th if there's a contest.

1      Let me ask you quickly though, with respect to
2 exclusivity, when does the debtor's current exclusivity run?
3      MS. CVEK:  Your Honor, I believe the deadline for
4 the debtor to file a plan expires on June 19th, which is why I
5 had sought to have the motion heard before your Honor today.
6      THE COURT:  All right.  Then has there been
7 discussion about agreement on exclusivity, or do you all want
8 to do that during this half-hour break?
9      MS. CVEK:  Your Honor, I don't believe that there
10 were any objections with respect to the debtor's exclusivity
11 motion.
12      THE COURT:  All right.  Then let's do this.  I'm
13 going to adjourn until 10:50, see if you all can reach interim
14 agreement or hammer out the remaining details.  If you can't
15 hammer out the remaining details that's fine, but I need to
16 know how much of this is agreed on an interim basis and how
17 much is not so that we can get -- see if we can get the
18 debtor's operations stabilized until the final hearing.
19      MS. PALMERI:  Your Honor, can I just make a point
20 quickly?  When --
21      THE CLERK:  Please step forward.
22      MS. PALMERI:  Oh, I'm sorry.  When Ms. Cvek had made
23 the representation about the necessity for the letter of
24 credit to be -- how quick it had to be obtained, the company
25 has been in violation of the collective bargaining agreement

1  since their bond has expired over months ago, so it is -- time

2  is of the essence as far as the union is concerned to get this

3  letter of credit.

4          They were supposed to be bonded or in lieu of a bond

5  have a self-bonding fund, and right now the union and the

6  funds are left naked, so to speak, without something like

7  that.  So each time -- each day that goes by, each week that

8  goes by they're potentially more exposed.

9          So since they are already in violation of the

10  collective bargaining agreement, I would like to make the

11  representation that time is of the essence with getting the

12  letter of credit.

13          THE COURT:  I understand that, Ms. Palmeri.  The

14  question more on the table this morning is whether the funding

15  source, which is Suffolk County, is willing to agree to the

16  triggering events for the letter of credit to be drawn under

17  the terms of the DIP facility.  That's really more of this

18  morning's issue, which is why I raised the question of when do

19  we need to broach that subject.

20          So I'm going to be in recess until about 10:50 and

21  see where we are, but again, we won't have very much time when

22  we come back out because of my 11:00 o'clock matters.

23          MS. CVEK:  Thank you very much, your Honor.

24          THE CLERK:  All rise.

25                  (Off the record/On the record)

1          THE COURT:  On the Elemco cases.

2          It's standing room only at the moment.  I apologize,

3     but let's go back on the record on the various Elemco cases.

4          Ms. Cvek, if you can report to the Court on the

5     results of the discussions during the recess?

6          MS. CVEK:  Very good, your Honor.  With respect to

7     the interim use of debtor in possession financing from Suffolk

8     County National Bank, the debtor has proposed and has

9     agreement among all parties with the following:

10          Immediate use of $50,000 from a secured credit line

11    to be used towards payment of operating expenses, including

12    payments for fringe and 401(k) benefits to the unions, two,

13    the agreement with SUNY Stony Brook for an irrevocable line of

14    credit, and your Honor, we're going to be coming back on the

15    24th -- I'm sorry, letter of credit, and we'll be coming back

16    on the 24th with negotiated terms on that.  We just would like

17    to state on the record that we've come to an agreement that

18    there will be an irrevocable letter of credit.

19          THE COURT:  With SUNY Stony Brook?

20          MS. CVEK:  With SUNY Stony Brook.

21          THE COURT:  For the job that's the subject of the

22    adversary?

23          MS. CVEK:  Yes.  And then we'll come back on the

24    24th with a settlement stipulation and hopefully resolve that

25    adversary proceeding, and thirdly and lastly, with respect to

the unions, there will be an irrevocable letter of credit with
one of three termination dates, one being a sale of the
debtor's assets, two being the debtor obtaining a union bond,
or three, a date of December 31 of '09, and there will be a
default provision as follows:

Upon the issuance of a 72-hour notice by the union
that remains to be uncured, the union may then make a
application to the Court to make a claim on the letter of
credit and have a hearing on that application for a claim at
the Court's earliest convenience.

Your Honor, we didn't want to set 36, 48, and 72-
hour notices because we are -- we do respect the Court's
availability, and in addition to that, should the 72-hour
notice remain to be uncured, the union shall not pull the
men's -- the debtor's men and employees until the Court's
resolution of the claim.

THE COURT:  All right.  Let me ask if there's any
party present that disagrees with the recitation on the record
of the interim agreement for use of cash collateral?

All right.  Then Ms. Cvek, I expect then that you
are going to e-mail a revised form of order to reflect the
interim authority for use.  The Court will though on this
record authorize interim use of cash -- interim borrowing
under the DIP facility in accordance with the terms first as
reflected in the proposed form of order, but as modified on

1 the record here today.

2       The Court notes that there are modifications to be

3 provided in the written form of order based upon the

4 statements made when we first called the matter before the

5 break, but in order to make sure the debtor has the operating

6 funds, the Court so orders the authority to use the -- borrow

7 under the DIP facility starting today on the terms as stated

8 on the record.

9       The Court does set the final hearing on the DIP

10 facility as June 24 at 11:00 a.m.  Any objection to the DIP

11 facility must be filed by 2:00 p.m. on June 22nd, and the

12 interim order to be entered following today's hearing will so

13 reflect both the objection deadline and the date and time of

14 the final hearing.

15       With respect to the exclusivity motion, the Court

16 noting that there's been no objection, will grant the debtor a

17 30-day extension of each of the periods; 30-day extension on

18 filing a plan and disclosure statement, 30-day extension on

19 solicitation, and will consider at the June 24 hearing any

20 further extensions of those dates and deadlines.

21       So if you will also, Ms. Cvek, draw an order on

22 exclusivity granting that relief, if you'll submit that to the

23 Court as quickly as you can, then we'll process the DIP order

24 and the exclusivity order so that both can then be mailed out

25 together giving creditors and parties in interest the notice

1  of the hearings to take place then on June 24th.

2          MS. CVEK:  Very good.

3          THE COURT:  All right.  Then anything else for today

4  on any of the Elemco matters?

5          MS. CVEK:  I don't believe so, your Honor.

6          THE COURT:  I take it that the use of the $50,000

7  will be consistent with the budget that was attached to the

8  DIP motion as docket item 135-3?

9          MS. CVEK:  Correct, your Honor.

10         THE COURT:  All right.  Very well.  Then the Court

11 appreciates the work being done on the interim resolution, and

12 we will see you all back on June 24th.

13         MS. CVEK:  Thank you very much, your Honor.

14         THE COURT:  Thank you all.

15         *       *       *

16         **CERTIFICATION**

17 I, Catherine Aldrich, certify that the foregoing is a correct

18 transcript from the electronic sound recordings of the

19 proceedings in the above-entitled matter.

20

21 _____      June 15, 2009

22     Catherine Aldrich