```
 1              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3

In re:                      .   Central Islip, New York
 4                          .   June 24, 2009
ELEMCO TESTING COMPANY, INC..   09-8097
 5
AND ELEMCO INDUSTRIES, INC.,.   08-76561
 6          Debtors.        .   Calendar Time:
. . . . . . . . . . . . . .     11:00 A.M.
 7

 8      ELEMCO TESTING COMPANY, INC. V. STATE UNIVERSITY
                 OF THE STATE OF NEW YORK
 9
         ADJ HEARING ON ORDER TO SHOW CAUSE RE: RELATED
10                      DOCUMENT(S) [2]

11          MOTION FOR PRELIMINARY HEARING [3]

12         ELEMCO TESTING COMPANY INC. AND ELEMCO
                     INDUSTRIES, INC.
13
           ADJ HEARING ON INTERIM APPLICATION FOR
14     COMPENSATION FOR JASON SAMUELS, PC AS SPECIAL
         COUNSEL TO THE DEBTORS; FEES:  $4,018.50,
15              EXPENSES:  0.00 [125]

16                 ADJ FROM 5/20/09

17         ADJ HEARING ON INTERIM APPLICATION FOR
        COMPENSATION FOR MARGOLIN, WINER & EVENS, LLP
18     AS ACCOUNTANTS FOR THE DEBTORS; FEES:  32,585.00,
                 EXPENSES:  0.00 [124]
19
                   ADJ FROM 5/20/09
20
           ADJ HEARING ON INTERIM APPLICATION FOR
21     COMPENSATION FOR RATTET, PASTERNAK & GORDON-
         OLIVER, LLP AS ATTORNEYS FOR THE DEBTORS;
22       FEES:  67,090.00, EXPENSES:  8,695.42 [126]

23                 ADJ FROM 5/20/09

24

25
```

```
1                                                                    2

2

3         ADJ MOTION TO EXTEND EXCLUSIVITY PERIOD FOR
     FILING A CHAPTER 11 PLAN AND DISCLOSURE STATEMENT [137]
4
                       ADJ FROM 6/9/09
5
          ADJ MOTION FOR AUTHORITY TO OBTAIN CREDIT UNDER
6             SECTION 364(b), RULE 4001(c) OR (d) [135]

7                      ADJ FROM 6/9/09

8                     ADJ STATUS HEARING

9                      ADJ FROM 5/20/09

10       ADJ HEARING ON FIRST APPLICATION FOR COMPENSATION
            FOR PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG
11           & JASLOW, LLP AS COUNSEL FOR THE OFFICIAL
     COMMITTEE OF UNSECURED CREDITORS; FEES:  $44,083.00,
12                 EXPENSES:  $749.29 [121]

13                     ADJ FROM 5/20/09

14       ADJ HEARING ON FIRST APPLICATION FOR COMPENSATION
            FOR CBIZ ACCOUNTING, TAX & ADVISORY OF NEW YORK,
15        LLC AS ACCOUNTANTS FOR THE OFFICIAL COMMITTEE
           OF UNSECURED CREDITORS; FEES:  $44,521.20,
16                 EXPENSES:  $204.00 [122]

17                     ADJ FROM 5/20/09

18       ADJ MOTION TO USE CASH COLLATERAL ON AN INTERIM
                          BASIS [4]
19
                       ADJ FROM 5/20/09
20

21           BEFORE HONORABLE ALAN S. TRUST

22

23

24

25
```

```
 1
 2
 3  Attorney for the Debtors:      RATTET, PASTERNAK & GORDON-
                                   OLIVER, LLP
 4                                 800 Mamaroneck Avenue
                                   Harrison, New York  10528
 5                                 BY:  JULIE A. CVEK, ESQ.

 6
    Attorney for United States
 7  Trustee:                       OFFICE OF UNITED STATES TRUSTEE
                                   560 Federal Plaza
 8                                 Central Islip, New York
                                   BY:  ALFRED DIMINO, ESQ.
 9
    Attorney for Suffolk County
10  National Bank:                 BALFE & HOLLAND, PC
                                   135 Pinelawn Road
11                                 Suite 125 North
                                   Melville, New York  11747
12                                 BY:  KEVIN E. BALFE, ESQ.

13
    Attorney for Electrical
14  Industry Board of Nassau
    and Suffolk County:            PAYKIN MAHON ROONEY & KRIEG, LLP
15                                 185 Madison Avenue
                                   New York, New York  10016
16                                 BY:  CHRISTOPHER ROONEY, ESQ.

17
    Attorney Local 25 IBEW:        LAW OFFICE OF RICHARD S. BROOK
18                                 114 Old Country Road
                                   Suite 250
19                                 Mineola, New York  11501
                                   BY:  RICHARD S. BROOK, ESQ.
20                                      PATRICIA E. PALMERI, ESQ.

21
    Attorney for State University
22  of New York at Stony Brook:    HON. ANDREW M. CUOMO
                                   OFFICE OF THE ATTORNEY GENERAL
23                                 STATE OF NEW YORK
                                   300 Motor Parkway
24                                 Hauppauge, New York  11788
                                   BY:  SUSAN MEDEIROS CONNOLLY,
25                                 ESQ.
```

```
1                                                                    4

2

3  Attorney for Utica Mutual
   Insurance Company:              TORRE, LENTZ, GAMELL, GARY &
4                                  RITTMASTER, LLP
                                   100 Jericho Quadrangle
5                                  Suite 309
                                   Jericho, New York  11753
6                                  BY:  PATRICIA A. WAGER, ESQ.

7  Attorney for Creditors
   Committee:                      PLATZER, SWERGOLD, KARLIN,
8                              LEVINE, GOLDBERG & JASLOW, PC
                                   1065 Avenue of the Americas
9                                  New York, New York  10018
                                   BY:  MITCHELL A. KAPLAN, ESQ.
10

11
   Court Recorder Operator:
12

13 Court Transcriber:             CATHERINE ALDRICH
                                   COMPU-SCRIBE, INC.
14                                 2376 Cleveland Street
                                   Bellmore, New York  11710
15

16

17

18

19

20

21

22

23
   Proceedings recorded by electronic sound recording,
24 transcript produced by transcription service

25
```

THE CLERK:  The Honorable Alan S. Trust presiding.

THE COURT:  Thank you.  Be seated, please.

All right.  Well, obviously we're running a little behind this morning partly due to the fire drill, so let's take appearance on the numerous Elemco Testing cases and matters.  Ms. Cvek.

MS. CVEK:  Good morning, your Honor.  Julie A. Cvek of Rattet Pasternak & Gordon-Oliver for the debtors.

MS. CONNOLLY:  Susan Medeiros Connolly, Assistant Attorney General on behalf of the State University of New York at Stony Brook.

MR. BALFE:  Good afternoon, your Honor.  Kevin Balfe, Balfe & Holland, attorneys for Suffolk County National Bank.

MR. DIMINO:  Good afternoon, Judge.  Alfred Dimino from the Office of the U.S. Trustee.

MR. KAPLAN:  Good afternoon, your Honor.  Mitchell Kaplan from Platzer, Swergold, counsel for the Creditors Committee.

MR. BROOK:  Good afternoon, your Honor.  Richard Brook for Local 25 IBEW.  Excuse my voice.

MS. PALMERI:  Good afternoon.  Patricia E. Palmeri from the Law Office of Richard Brook for Local 25 IBEW.

MS. WAGER:  Good morning.  Patricia Wager of Torre, Lentz, Gamell, Gary & Rittmaster for Utica Mutual Insurance

1  Company, the surety creditor.

2          THE COURT:  Could I have your last name again?

3          MS. WAGER:  Certainly.  Wager, W A G E R.

4          THE COURT:  Thank you.

5          MR. ROONEY:  Good afternoon, your Honor.

6  Christopher Rooney, Paykin, Mahon, Rooney & Krieg for

7  Electrical Industry Board.

8          THE COURT:  All right.  What have you all worked

9  out?

10         MS. CVEK:  We worked out everything, your Honor,

11 substantially.

12         THE COURT:  Very well.  If you'll e-mail an order?

13         MS. CVEK:  Yes.  Your Honor, I ask if we could take

14 Stony Brook first if that's acceptable.  Your Honor, we have

15 resolved the adversary proceeding pursuant to the terms of the

16 letter of credit contained in the final debtor in possession

17 financing order.

18         Stony Brook will be issued a letter of credit in the

19 amount of $50,000 in consideration of the performance bond and

20 requirement under the contract as described in the complaint

21 filed in the adversary proceeding.  The letter of creditor

22 shall be terminated upon one of three things; a 363 sale, a

23 performance bond obtained by the debtor, or the termination of

24 the contract by Stony Brook.  Should Stony Brook wish to make

25 a claim on the letter of credit, they will make an application

1  to the Court and there will be a hearing.

2        Your Honor, we circulated a settlement stipulation

3  containing the settlement terms, as well as discontinuing the

4  adversary proceeding pursuant to the terms of the settlement

5  stipulation, and we wish to submit that settlement stipulation

6  on notice to your Honor.  We were hoping we could submit it on

7  ten days notice to all parties filing notices of appearance in

8  Court today.

9        THE COURT:  All right.  Let me hear from Stony

10  Brook.

11        MS. CONNOLLY:  Your Honor, that is substantially our

12  understanding.  I've seen the drafts.  We are in agreement.

13  It just is a matter of getting the final drafts and

14  circulating them and submitting them to your Honor.

15        THE COURT:  All right.  Then would you contemplate

16  at this point that the material terms of the agreement would

17  be set out in a settlement motion and that would be circulated

18  even if it's pending the final documents?  I'm concerned about

19  what appears to be an issue of a time delay and --

20        MS. CONNOLLY:  I think that would be fine.

21        MS. CVEK:  That's acceptable, your Honor, yes.

22        THE COURT:  All right.  And then given the level of

23  participation in the case, it would seem that most of the

24  active parties and constituents are here today.  It's not

25  typically my practice to take oral motions, but in the

1  interest of saving some money, do any party have an objection

2  to shortening the 9019 notice period to ten days?

3          MR. MITCHELL:  The committee has no objection, your

4  Honor.

5          MR. BROOK:  No objection here, your Honor.

6          MR. BALFE:  No objection, your Honor.

7          MR. KAPLAN:  No objection, your Honor.

8          MR. DIMINO:  The United States Trustee has no

9  objection, Judge.

10          THE COURT:  All right.  Then what the Court will do

11  then, Ms. Cvek, is I will enter an order shortening the notice

12  time for consideration of the settlement announced on the

13  record to ten days from filing and service.  The Court takes

14  settlements by presentment, so you can notice that out by

15  presentment.  Again, the presentment period will run ten days

16  after the filing and service of the motion absent objection.

17   After that is percolated then you can submit an order

18  approving.  If there's an objection filed, then I assume by

19  the end of today's calendar there may be another hearing date

20  set, so we'll talk about hearing on objections at the end of

21  the calendar, but I think we want to let Ms. Connolly go.

22          Do you all currently have another date for hearing

23  with us?

24          MS. CVEK:  We do not, your Honor.  I was going to be

25  asking for an adjournment.  After today's hearing I anticipate

the only thing to be carried to the next hearing will be a
case conference and possibly exclusivity, and I was asking --
I was hoping to have an adjournment through August.

       THE COURT:  Let's go ahead and find that date now so
that we can --

                 (Pause in proceedings)

       THE COURT:  All right.  Our August date right now is
August 12th.  That would be at 11:00 o'clock.  If there is an
objection filed to the settlement with Stony Brook, then we
will try to find time in July to work you in for an expedited
hearing on that because that has been at the fulcrum a lot of
the case issues.  So rather than assign you a hearing date and
time in July that we don't have right now, let's see if any
objection comes in, and we'll work from there, but August 12th
at 11:00 o'clock for right now would be our next hearings in
the Elemco cases.

       So with that said, Ms. Connolly, you can go if you
want.  You can stay if you want, but I think for now we're
done with you.

       MS. CONNOLLY:  Thank you very much, your Honor.

       THE COURT:  All right.  Thank you all, and thank you
for getting that worked out.

       Ms. Cvek, I do again -- I do need for you to e-mail
an order shortening time.

       MS. CVEK:  Of course, your Honor.

1    THE COURT:  Also, let me just, because we do also

2 run into this, are you also asking to limit notice or just to

3 shorten time?

4    MS. CVEK:  Excuse me, your Honor?

5    THE COURT:  Are you also asking to limit notice or

6 are you just asking to shorten time?

7    MS. CVEK:  That will be to limit notice to the

8 notices of appearance only as opposed to all creditors, your

9 Honor.

10    THE COURT:  It would seem appropriate to the Court

11 to limit notice of the settlement to all parties who have

12 filed notices of appearance, as well as the parties who are

13 present in the courtroom today.  This is a -- again, a full

14 and active varying constituencies in the case, so also with

15 committee being present and represented, the Court is

16 comfortable to limit notice again to the parties participating

17 in today's hearing, as well as all parties who have filed

18 notices of appearance in the case, and of course, including

19 the United States Trustee.

20    So if you will e-mail an order shortening and

21 limiting notice, we will process that for you.

22    MS. CVEK:  Thank you very much, your Honor.

23    THE COURT:  All right.  Thank you.

24    MS. CVEK:  If we can proceed to the debtor's

25 application for debtor in possession financing, which is

1 before your Honor on a final basis today?

2        Your Honor, a final order was circulated.

3 Objections were filed by Local 25 and Electrical Industry

4 Board.  After having conversations with their counsel, I

5 believe all the objections have been resolved.  A revised

6 final order was drafted and circulated to all parties, and I

7 believe all objections have been resolved in accordance with

8 the final -- with the revised final debtor in possession

9 borrowing order.

10        A copy of that order has been provided to your

11 chambers yesterday via e-mail with a redlined version to the

12 interim order.  The final debtor in possession borrowing

13 order, the terms of it would provide a $200,000 loan to the

14 debtor broken down as follows:  There would be a $50,000

15 capital infusion to the debtor for its operations, a $50,000

16 cash infusion which would be used to pay professional fees, a

17 $50,000 letter of credit for the benefit of Local 25 and IEB

18 in lieu of the bonds and requirements under the  collective

19 bargaining agreement which shall terminate either upon a 363

20 sale, the issuance of a union bond, or December 31st of 2009.

21        In order for Local 25 or IEB to make a claim on the

22 letter of credit they would have to make an application to

23 this Court.  Your Honor, there was language in there that

24 limited Local 25 and IEB's ability to pull the men from the

25 job -- the debtor's job sites in the event a 72-hour notice

1 went uncured.

2       After conversations with Local 25 and IEB, that
3 language has been removed so that the Local 25 and IEB's
4 rights are not impaired under this collective bargaining
5 agreement by virtue of this order, so that in the event an
6 uncured 72-hour notice -- a 72-hour notice is issued and
7 remains uncured, Local 25 and IEB can pull the men.

8       Your Honor, in addition, within two days of issuance
9 of letter of credit, that will be provided to counsel to IEB
10 for them to hold in the event that they need to make an
11 application to the Court, and the fourth term of that
12 $200,000, as I described to your Honor, it would be a 50,000
13 letter of credit to the benefit of SUNY Stony Brook in lieu of
14 a performance bond, which once again, will terminate either
15 upon a 363 sale, the obtaining of a performance bond, or the
16 termination of the contract, and once again, for SUNY Stony
17 Brook to make an application on that letter of credit they
18 must come to your Honor for authorization.

19       Your Honor, the 200,000 being borrowed by the debtor
20 is subject to Section 364(c)(1) of the Bankruptcy Code, and
21 has several carve-outs.  There's a carve-out for validly
22 existing and unavoidable pre-petition chattel with respect to
23 the pre-petition personal property, mechanic's liens, Utica's
24 3(a) claims, trustee's fees, avoidance actions under Chapter 5
25 of the Bankruptcy Code, professional fees that are allowed and

awarded by this Court, and those fees of a hypothetical

Chapter 7 trustee.

Your Honor, the interim final cash collateral order

provided for notice of this hearing.  Notice was properly

served on June 16th, and an affidavit of service was filed

with this Court.  All objections being resolved, I

respectfully request that this Court enter the final debtor in

possession financing order.

THE COURT:  Let me make sure I have the dollars

correct.  There is a $200,000 loan from Suffolk County

National Bank, and in addition to that there's a $50,000

capital infusion from the debtor, from the debtor's principal?

MS. CVEK:  No.  I'm sorry, your Honor.  The $200,000

is broken down into four parts.  The first 50,000 of that

200,000 will be used for working capital for the debtor.  It's

earmarked for working capital.  The second $50,000 will be

provided by Suffolk County National Bank to the debtor is

going to be earmarked for payment on professional fees, and

then the remaining $100,000 of the 200 will be broken down

into $50,000 letter of credits -- letters of credit.

THE COURT:  All right.  Then let me ask if there's

any party present -- let me, before I do that, the order that

has been submitted now to the Court, that has also been

circulated to all the parties present?

MS. CVEK:  Yes, your Honor.

1          THE COURT:  All right.  Let me ask then if there's
2     any party that disagrees with the recitation now on the record
3     for the providing and final authorization of the DIP facility.
4      I see a chorus of heads shaking horizontally.
5          MR. BROOK:  Your Honor, on behalf of Local 25, which
6     had some very serious objections in the past, our objections
7     have been overcome and resolved.  So there's no objection from
8     Local 25 to the final order as most recently presented to your
9     Honor.
10         THE COURT:  Thank you, Mr. Brook.
11         Ms. Wager.
12         MR. WAGER:  Utica has no objection at all.  Our
13    objections were handled in the interim order, and we're fine
14    with the final order.
15         THE COURT:  All right.  And Ms. Palmeri, you and Mr.
16    Brook are on the same team?
17         MR. BROOK:  Yes, your Honor.
18         MS. PALMERI:  Yes, your Honor.
19         THE COURT:  All right.  Mr. Rooney.
20         MR. ROONEY:  As respects the final order as
21    submitted to the Court resolves our objection, we agree as
22    well.
23         THE COURT:  Mr. Kaplan.
24         MR. KAPLAN:  The committee has no objection to the
25    final form of the order, your Honor.

1          THE COURT:  And then Mr. Balfe.

2          MR. BALFE:  No objection.

3          THE COURT:  Mr. Dimino.

4          MR. DIMINO:  Judge, the United States has no

5    objection to the form of the final order or the contents

6    thereof.

7          THE COURT:  All right.  Is there a -- is there a

8    provision within the order or is there otherwise an agreement

9    among the professionals on how to allocate the allocated

10   $50,000?

11         MS. CVEK:  Yes, your Honor.  I have actually

12   circulated an order to the Office of the U.S. Trustee and all

13   professionals, as well as Suffolk County Bank that provides

14   for partial payment of the allowed interim professional fees

15   that I will submit to your Honor, and I was going to go

16   through that as well at today's hearing.

17         THE COURT:  All right.  Then based on the agreement

18   of --

19         MS. CVEK:  Your Honor, if I can interrupt one other

20   thing?  I did want to clarify on the record that Suffolk

21   County's lien for this post-petition financing is subject to

22   the property of all three debtors.  The pre-petition secured

23   lien was only against Elemco Testing.  This lien is now

24   against all three debtors, Elemco Testing, Elemco

25   Construction, and Elemco Industries.

1          THE COURT:  But the DIP motion was fully served in

2  all three cases?

3          MS. CVEK:  Yes, it was, your Honor.

4          THE COURT:  All right.  Then based upon the

5  agreement and the lack of objection, which has not been

6  resolved by agreement, the Court will approve the debtor in

7  possession financing.  We will look over and process the form

8  of order, and if there's anything in there that bothers the

9  Court, then we'll work through that, but based upon the

10  agreement as announced, there's no lien against avoidance

11  actions being granted under the motion, so that's one of the

12  big red flags for the Court.  So as stated on the record, the

13  Court will approve the agreement and then we will process the

14  order as quickly as we can.

15          MS. CVEK:  Thank you very much, your Honor.  I

16  believe, if I may proceed to the next matter on the calendar?

17   We also have a final cash collateral which was carried

18  through today, your Honor.

19          After consulting with counsel to the committee and

20  counsel to Suffolk National Bank, as well as Utica, we believe

21  that we are ready to proceed on final cash collateral subject

22  to substantially the same terms of the interim cash collateral

23  order, the amendment to the interim cash collateral order, and

24  all the extension stipulations, and as well as the budget

25  which was annexed as an exhibit to the debtor's DIP financing

1  motion and any other subsequent budgets to be provided by the

2  debtor to counsel for Suffolk County National Bank and/or the

3  committee.

4         Your Honor, we will be circulating a final cash

5  collateral stipulation order and then submitting it once all -

6  - once language is all agreed to to your Honor.

7         THE COURT:  And there I take it that there will be n

8  material variance between the interim order, which has thus

9  far been entered, and the DIP order that's about to be entered

10  that the final cash collateral order will in effect reconcile

11  the two orders?

12         MS. CVEK:  Yes, your Honor.  The final cash

13  collateral order will include essentially the same language as

14  the interim order plus the amendments to that interim order

15  which merely carves out the Utica's 3(a) liens.

16         THE COURT:  All right.  And that order will be

17  drafted and circulated following the hearing?

18         MS. CVEK:  Yes, your Honor.

19         THE COURT:  All right.  Then I'm assuming at this

20  point that given the announcement on the final cash collateral

21  and given the agreement worked out on the DIP lien, that

22  there's no objection to the Court making the interim cash

23  collateral order final so long as the final order is

24  reconciled to the DIP order?

25         Let's start with Mr. Kaplan.

1     MR. KAPLAN:  That's correct, your Honor.  Obviously

2 subject to our review of the final order, but as long as it's

3 substantially the same as the interim, it shouldn't be

4 problematic.

5     THE COURT:  All right.  Then let me just ask any

6 party present who opposes entry of a final cash collateral

7 order to go ahead and state that objection.

8     All right.  Then the Court will grant final approval

9 to the use of cash collateral.  Again, the order will be

10 circulated among the parties and submitted with approval as to

11 form of all parties present.  If there's any objection to the

12 final form of the order, then I'll have -- I'll direct that

13 Ms. Cvek upload what the debtor believes to be the final form

14 of order, circulate that to the parties, and we'll have a 72-

15 hour window for any party to object to the form of order once

16 submitted to the Court, but that again is only in the event

17 that there's not agreement after there's been a reasonable

18 window of time for the parties to work through the final

19 language.

20     MS. CVEK:  Thank you very much, your Honor.

21     I believe the next matter that was carried to

22 today's hearing was the debtor's authorization to make payment

23 on the interim allowed professional fees.

24     Your Honor, now that the debtor has approval of

25 $50,000 to be earmarked towards payment of professional fees,

the debtor respectfully requests that it use that $50,000
towards payment of the allowed professional fees.  Your Honor,
I have drafted an order and circulated it to all
professionals, counsel to the committee, counsel for Suffolk
County National Bank, and the Office of the U.S. Trustee for
their review and approval, and I believe that we have an
agreed form of order which provides for full payment on the
allowed expenses, and then after a 29 percent payment on the
net allowed fees after the holdbacks and after application of
any pre-petition retainers, so that the Rattet Pasternak and
Gordon-Oliver firm has an allowed fee of $55,000 after giving
credit for the $17,608.80 of pre-petition retainer, they'll
receive a 29 percent payment on their fees of $10,843.45, and
will receive 100 percent payment on our allowed expenses of
$8,695.42.

        With respect to the debtor's accountants, Margolin
Winer & Evens, LLP, they have an allowed fees after holdback
of $26,000.  Since they did not have a pre-petition retainer,
their 29 percent payment would total $7,540, and they would
not be receiving any payments on expenses since they do not
have any allowed expenses.

        With respect to Jason Samuels, PC, special counsel
for the debtors, they have an allowed fee of $10,000, which
after netting out the pre-petition retainer of $10,000, they
will not receive any payment on their fees, but they will get

1  a payment on their allowed expenses of $36.25.

2      With respect to counsel to the committee, Platzer,

3  Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, they have an

4  allowed fee after holdback of $37,000.  After their 29 percent

5  payment, they will receive $10,730, and they will receive a

6  payment of $749.29 of their allowed expenses, and finally,

7  financial advisors and accountants to the committee, CBIZ

8  Accounting Tax and Advisory of New York, LLC, have an allowed

9  fees after holdback of $37,000.  They also will get a fee

10  payment of $10,730, and payment on their expenses of $204.

11      THE COURT:  All right.  Let me then ask first, Mr.

12  Dimino, I ask if your office has any objection to that

13  arrangement as outlined on the record.

14      MR. DIMINO:  Judge, the United States Trustee has no

15  objection to that arrangement, and I saw the form of order and

16  I have no objection to that.

17      The only question I do have is clarification is that

18  the $50,000 that's coming in, is it sufficient to pay the full

19  amount of the allowed interim fees?  So I'm interested in

20  understanding if there is an agreement with the debtor as to

21  payment of the balance of those fees, and if so, what is the

22  agreement or what is the anticipation of the parties?

23      MS. CVEK:  Your Honor, the debtors' DIP budget which

24  -- the budget that was annexed to debtor's DIP application --

25  financing application that will be annexed to the debtor's

1  final cash collateral order provides for $2,000 budgeted

2  payments towards professional fees, however, at this point our

3  firm will not be seeking payment on that unless the debtor is

4  -- has the financial wherewithal to pay that.  We don't want

5  to put the debtor in a position where they have to choose

6  whether they pay a critical vendor or fringe benefits to the

7  union or our fees.

8       At this point there's an understanding that this

9  payment we're taking right now is all we're going to be

10 seeking from the debtor.

11      With respect to the committee and their anticipated

12 -- if they anticipate to try to collect anything from the

13 debtor, I'll let Mr. Kaplan speak to that, but at this point I

14 don't -- my proposed order does not bind the debtor to making

15 any further payments other than as set forth in the order and

16 that budget.  The order allows them if they have the financial

17 wherewithal, but does not actually bind the debtor to make

18 those payments.  We don't want to put them in that position

19 that creates a conflict amongst the administrative creditors.

20      THE COURT:  It would seem, and I'll come to you

21 next, Mr. Kaplan, it would seem thought that perhaps the

22 cleanest course to now proceed on is to simply have the order

23 provide that no further payments will be made on the allowed

24 interim fees without further order of the Court.  For the

25 debtor to take $2,000 sporadically and try to divide it up

1    into $400 here and $400 there may frankly be more effort than

2    simply waiting for another 60 days and see how the case

3    progresses, but let me ask Mr. Kaplan.

4            As outlined by Ms. Cvek, and I realize there's an

5    order out there circulating to this effect, but is the

6    agreement as outlined consistent with your understanding?

7            MR. KAPLAN:  It is, your Honor.  We believe that the

8    proposed order represents a fair compromise between allowing

9    the professionals some payment for their services from a case

10   that's been going on since December of 2008, but at the same

11   time allowing the debtor some breathing room with their new

12   financing, and not overburdening them with additional

13   payments.

14           With respect to any further payments on the allowed

15   fees, the budget as proposed by the debtor does provide for

16   $2,000 per week in professional fees, and in theory one would

17   like to think that that will be set aside by the debtor, but

18   in terms of forcing them to do it, we're not willing to burden

19   -- we're not -- we don't want to burden the debtor with

20   forcing them to do it at this point, and we would just say

21   that the proposed order is without prejudice to the

22   committee's rights or the rights of any professionals to seek

23   further payment on the fees that have been allowed to date.

24           THE COURT:  All right.  Very well.  Then is there

25   any party present otherwise that has an objection to this

allocation of the $50,000 that's coming in through the DIP loan?

All right.  Then what I'll do is I will look for the order to be submitted.  It sounds again to the Court that the best way to proceed is if the debtor is able to set money aside as it operates that we should address at a later hearing whether or not there is at that time money available to circulate among the professionals, and certainly that is without prejudice to any professional to come in and seek other relief, but for current purposes, the Court will approve the allocation as outlined, and will look for the order if it's already been submitted.

If it's not yet been submitted, if you would simply iterate it to provide that further payment is subject to further order of the Court.

MS. CVEK:  Your Honor, I will revise the order accordingly, circulate it to parties, and then submit it to your chambers.

THE COURT:  All right.  And let me also let the professionals know that that is -- further payment is something that the Court would be willing to consider at the August 12 hearing.  We'll have a better sense of where the debtor is at the August 12 adjourned status -- general case status conference.

So if you reach some other agreement in the interim

1  for further payment, simply bring that to the Court's

2  attention.  If there's some other agreement worked out, Ms.

3  Cvek, if you would file a letter with the Court by August 7th,

4  then we'll be able to pick that up and I'll review it in

5  preparation for the August 12 hearing.

6          MS. CVEK:  Very good, your Honor.

7          Your Honor, I believe there is one last matter on

8  your calendar, the debtor's motion for exclusivity.

9          At the last hearing your Honor extended the debtor's

10  exclusive periods through -- well, the time to file a plan

11  through July 16th, and your Honor said that you would hear the

12  motion once again on today's hearing for further extension.

13          At this point, your Honor, we have resolved debtor

14  in possession financing, final cash collateral, the debtor's

15  adversary proceeding with SUNY Stony Brook.  I believe things

16  have calmed down.  The relation has calmed down between the

17  debtor and Local 25.  At this point the debtor is continuing

18  in its efforts to try to solicit a bid from the potential

19  purchaser it's been in contact with.  It has not received a

20  bid yet.

21          With that being said, the debtor's contemplating

22  retaining a business broker to market the debtor's assets to

23  either obtain a stalking horse or proceed to setting up an

24  auction so that we could bring any potential purchasers to the

25  table as opposed to sitting back and waiting for a potential

purchaser to make an offer.

With that being said, the debtor respectfully submits that cause exists to extend the debtor's exclusive period for filing a plan through the -- through August.  Your Honor, I would respectfully request that it would be through the August 12th hearing date.

THE COURT:  All right.  And that would be -- the request is to extend the exclusive period for the filing of a plan and disclosure statement to August 12th?

MS. CVEK:  Yes, your Honor.

THE COURT:  And then is there a contemplated date or a deadline to seek to solicit acceptances of that plan?

MS. CVEK:  Your Honor, after reviewing the order from last hearing, I think that period was actually extended through September.  I think when I submitted the order to chambers, as an oversight I didn't change that date, so that the exclusive period for soliciting votes is actually still through September.  So I believe that that date is still proper.  So I'll keep that date in the order as well.

THE COURT:  Is that September 30th?

MS. CVEK:  Your Honor, I'm not positive of the date.  I seem to think it was September 16th, but I'm not positive.

MR. DIMINO:  Judge, I believe it's September 14th, according to the calendar.

THE COURT:  All right.  September 14th is going to

1  be cutting it close, so let me ask if any party present has an

2  objection to extending the debtor's exclusive period to file a

3  plan and disclosure statement to August the 12th and extending

4  the solicitation period to September 30th?

5          MR. KAPLAN:  The committee has no objection, your

6  Honor.  Just as a suggestion that may be instead of the August

7  12th, that we extend it to August 15th just as a precaution.

8          THE COURT:  Any other party present wish to be heard

9  on exclusivity?

10          All right.  Then the Court will extend the exclusive

11 period to file a plan to August the 15th, and the solicitation

12 of votes to September the 30th.  I will ask that following the

13 hearing, Ms. Cvek, if you would get with Mr. Balfe -- in the

14 first instance Mr. Balfe, Mr. Kaplan, and the U.S. Trustee's

15 Office to talk about a date by which even if the debtor

16 doesn't file a plan and disclosure statement, it does file at

17 least an outline of the plan.

18          There's been plenty of activity for the debtor

19 inside and outside the courthouse since the filing of the

20 case.  This may not be the appropriate time to burden the

21 debtor with the filing of an outline, but certainly by the

22 middle of August with this breathing space that now hopefully

23 the debtor will have to focus only on the business, the debtor

24 should be able to report to us by August 12th, if it has not

25 yet filed a plan, when it will file an outline, at least a

1  business outline of what a plan would look like.

2            So if you would visit with that issue with the

3  bank's counsel, including counsel for the U.S. Trustee so that

4  when you all come back on August 12th if there's not a plan on

5  file, at least we know when an outline of the plan will be

6  filed.

7            MS. CVEK:  Okay, your Honor.

8            THE COURT:  All right.  Then anything else on the

9  calendar for today on the various Elemco cases?

10            MS. CVEK:  I don't believe so.

11            THE COURT:  All right.  Then the Court appreciates

12  you all getting these matters worked out.  We will look for

13  the settlement motion with Stony Brook.  We will look for the

14  cash collateral final order, and we will look for the other,

15  the DIP order and the professionals' order, and we will

16  process those all as quickly as we can.

17            With respect to settlement, we'll wait until that's

18  noticed out, but we will process the order shortening and

19  limiting notice when submitted, and then we will see you all

20  back on August the 12th at 11:00 o'clock?  11:00 o'clock.

21            MS. CVEK:  Thank you very much, your Honor.

22            THE COURT:  You will also, Ms. Cvek, file a letter

23  online giving notice to all the parties of the adjourned

24  hearing date and time, again August 12th at 11:00.

25            All right.  Thank you all.

1          MS. CVEK:  Thank you very much, Judge.

2          THE COURT:  All right.  We'll be adjourned on the

3  various Elemco matters.  We'll go off the record.  I'm going

4  to stay out and finish my notes.  You all may pack up.

5          MS. CVEK:  Thank you very much, Judge.

6          THE COURT:  Thank you.

7

8                    *            *            *

9

10                        **CERTIFICATION**

11

12  I, Catherine Aldrich, certify that the foregoing is a correct

13  transcript from the electronic sound recordings of the

14  proceedings in the above-entitled matter.

15


16  _____          July 1, 2009

17          Catherine Aldrich