RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtors
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Robert L. Rattet
Julie A. Cvek

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
In re:

                                                                         Chapter 11

ELEMCO TESTING COMPANY, INC.,           Case No. 08-76561-ast
ELEMCO ELECTRICAL CONSTRUCTION CO., INC., and           08-76562-ast
ELEMCO INDUSTRIES, INC.                                               08-76563-ast
                                                                         (Jointly Administered)

                            Debtors.
------------------------------------------------------------------------ X

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION OUTLINE

Elemco Testing Company, Inc. ("<u>Elemco</u> <u>Testing</u>"), Elemco Electrical Construction Co., Inc. ("<u>Elemco</u> <u>Construction</u>"), and Elemco Industries, Inc. ("<u>Elemco</u> <u>Industries</u>", together with Elemco Testing and Elemco Construction, the "<u>Debtors</u>") by their attorneys, Rattet, Pasternak & Gordon-Oliver, LLP hereby submit this outline in support of a Joint Chapter 11 Plan of Reorganization (the "<u>Plan</u>") to be filed with the Bankruptcy Court.

**I.**     **<u>Plan Summary and Treatment of Claims and Equity Interests</u>**

Though the Plan, the Debtors seek to substantively consolidate their estates and thereafter make payments to their creditors in the order of priority set forth in the Bankruptcy Code. The Debtors propose the following classification and treatment of their creditors:

A.     <u>Unclassified Claims</u>:

    1.     <u>General Administrative Expense Claims</u>: General Administrative Expense Claims include claims for the actual and necessary costs and expenses incurred during the Chapter 11 Cases. The Holders of Allowed Administrative Expense Claims shall be paid in accordance with

1

the terms and conditions of any relevant contract or other agreement, or, if there is no such contract or agreement, then in full in cash on the Confirmation Date, or upon such other terms as may be agreed upon by the Debtors and such claimants.

2. <u>Administrative Professional Fees</u>: All entities seeking an award by the Bankruptcy Court for Professional Fees, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, (a) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within the time proscribed by the Court so that such application can be considered for allowance at the Confirmation Hearing, and (b) if granted, such an award by the Bankruptcy Court shall be paid in full in such amounts as allowed by the Bankruptcy Court, (i) on the later of the Effective Date or the date such Administrative Professional Fee Claim becomes Allowed, (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Professional Fee Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. All Administrative Professional Fees for services rendered in connection with these Chapter 11 Cases and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be paid by the Disbursing Agent upon receipt of an invoice therefor, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Reorganized Debtors and any Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court. The Debtor estimates that the Administrative Professional Fes total $200,000.

3. United States Trustee's Fees: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930(a)(6) for each respective Chapter 11 case shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtors. The Debtors shall be responsible, through the entry of a final decree closing the case for the payment of United States Trustee quarterly fees for each respective Chapter 11 case, and pursuant to 31 U.S.C. §3717, any interest assessed on unpaid Chapter 11 quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department at the charges become past due.

B. Classified Claims:

1. Class 1 – Secured Claims: Class 1 consists of holders of Allowed Secured Claims that are secured by a lien on property in which the Debtor has an interest, which lien is valid, perfected and enforceable under applicable law, to the extent of the value of the claim holder's interest in the Debtors' interest in such property, as determined by Bankruptcy Code §506. The Debtors shall continue to remit payments to Class 1 Secured Claimants on their respective secured claims in accordance with the respective loan agreement and Class 1 Secured Claimants shall retain liens on their respective collateral. Class 1 Claims are not impaired under this Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan. The Debtors estimate that Class 1 Secured Claims total $1,655,000.00.

2. Class 2: Class 2 consists of all Allow Priority Tax Claims. The Debtors shall pay to Holders of Class 2 Claims the amount of their Allowed Claim in full and in cash on the Effective Date, in full and final satisfaction of their claims as against the Debtors. Class 2 Claims are not impaired under the Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan. The Debtors estimate that the Class 2 Priority Tax Claims total $-0-.

3. Class 3: Class 3 consists of all Allowed Non-Tax Priority Claims. The Debtors shall pay to Class 3 Non-Tax Priority Claimants $100,000 in cash on the Effective Date, and

thereafter six (6) semi-annual payments of $50,000 commencing six (6) months after the Effective Date, in full and final satisfaction of its claims as against the Debtors and any of its officers and owners. Should the Debtors fail to timely remit the any of these installments, the Debtors will have a period of thirty (30) days after notice of default to remit the payment. Class 3 Non-Tax Priority Claims are impaired under the Plan, and thus are entitled to vote on the Plan. The Debtors estimate that the Class 3 Non-Tax Priority Claims total $400,000.

  4. <u>Class 4 - General Unsecured Claims:</u> Class 4 consists of the holders of Allowed Unsecured, Non-Priority Claims. Allowed General Unsecured Claimants will receive a five (5%) distribution on the Effective Date, with an additional fifteen (15%) distribution over three years. Class 4 General Unsecured Claims are impaired under the Plan, and thus are entitled to vote on the Plan. The Debtors estimate that Class 4 General Unsecured Claims total $1,882,000.

  5. <u>Class 5 - Equity Interests:</u> Class 5 consists of the claims of holders of equity interest in the Debtors. Upon the Effective Date, the Class 5 Equity Interests shall be deemed cancelled and extinguished. Class 5 Equity Interest Claimant shall not receive any distribution under the Plan on account of any pre-petition claims. The shares of the Debtors shall be reissued to Robert J. White in consideration for the $395,000 cash infusion to the Debtors on the Effective Date. Class 5 Equity Interest Claimants are impaired pursuant to Section 1124 of the Code.

## II. Means for Execution and Plan Feasibility

The Debtors propose to fund the Plan through 2 sources: (1) cash infusion by Robert White, and (2) proceeds from the Debtors' future operations.

In order to confirm the Plan, the Debtors will require approximately $395,000 at Confirmation. The Debtors' principal, Robert White, will provide a cash infusion equal to the amount required at Confirmation in order to consummate the Plan. Future payments due under the Plan will be funded by the Debtors' future operations. During the course of the Debtors' Bankruptcy proceeding, the Debtors collectively have shown a net operating profit exceeding $500,000 through July 31, 2009. These net operating profits suggest that now that the Debtors have overcome the hurdles of its transition into Bankruptcy its initial cash flow problems, the Debtors' business operations have stabilized and are now profitable. During 2009, the Debtors have shown signs of emerging from the downswing caused by the country's economy. Over the past few months, the Debtor has submitted over 100 proposals for new projects aggregating over $1.0 million in work, which is more proposals that have been submitted over the past two years. The Debtors total "backlog" of proposals submitted is over $2.0 million, which exceeds 2008's figures by over $1.0 million. The Debtors project a net operating profit for the next twelve months exceeding $625,000, which, together with the cash infusion of Robert White, are sufficient to support the Debtors' Plan payments.

Dated: Harrison, New York
September 16, 2009

> RATTET, PASTERNAK & GORDON-OLIVER, LLP
> Attorneys for the Debtors
> 550 Mamaroneck Avenue
> Harrison, New York 10528
> (914) 381-7400
>
> By: */s/ Julie A. Cvek*
>     Julie A. Cvek

5