```
 1                 UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF NEW YORK
 2

 3

In re:                       .   Central Islip, New York
 4                           .   September 23, 2009
ELEMCO TESTING COMPANY, INC..
AND ELEMCO INDUSTRIES, INC.,.    08-76561
 6              Debtors.     .   Calendar Time:
. . . . . . . . . . . . . . . .  3:00 P.M.
 7

 8
                        ADJ STATUS CONFERENCE
 9
              ADJ FROM 5/20/09, 6/24/09, 8/12/09
10

11              BEFORE HONORABLE ALAN S. TRUST

12

13
Attorney for the Debtors:    RATTET, PASTERNAK & GORDON-
14                           OLIVER, LLP
                             550 Mamaroneck Avenue
15                           Harrison, New York  10528
                             BY:  JULIE A. CVEK, ESQ.
16

17
Attorney for United States
Trustee:                     OFFICE OF UNITED STATES TRUSTEE
18                           560 Federal Plaza
                             Central Islip, New York
19                           BY:  ALFRED DIMINO, ESQ.

20
Attorney for Electrical
Industry Board:              LALLY MAHON & ROONEY, LLP
21                           33 West 44th Street
                             Suite 1400
22                           New York, New York  10036
                             BY:  CHRISTOPHER S. ROONEY, ESQ.
23

24

25
```

```
 1
 2
Attorney Local 25 IBEW:        LAW OFFICE OF RICHARD S. BROOK
                               114 Old Country Road
 4                             Suite 250
                               Mineola, New York  11501
 5                             BY:  PATRICIA E. PALMERI, ESQ.

Attorney for State University
of New York at Stony Brook:    HON. ANDREW M. CUOMO
 7                             OFFICE OF THE ATTORNEY GENERAL
                               STATE OF NEW YORK
 8                             300 Motor Parkway
                               Hauppauge, New York  11788
 9                             BY:  SUSAN MEDEIROS CONNOLLY,
                               ESQ.
10

Attorney for Creditors
Committee:                     PLATZER, SWERGOLD, KARLIN,
12                        LEVINE, GOLDBERG & JASLOW, LLP
                               1065 Avenue of the Americas
13                             New York, New York  10018
                               BY:  MITCHELL A. KAPLAN, ESQ.
14                                  (Via Telephone)

15

Court Recorder Operator:       BARBARA BRAUNSDORF

17
Court Transcriber:             CATHERINE ALDRICH
18                             COMPU-SCRIBE, INC.
                               2376 Cleveland Street
19                             Bellmore, New York  11710

20

21

22

23

Proceedings recorded by electronic sound recording,
transcript produced by transcription service
25
```

1        THE COURT:  I have the feeling I've seen you all
2    here before.

3        MS. CVEK:  Usually in the morning.

4        THE COURT:  Usually in the mornings.  That's right.
5    Except for Mr. Dimino, we get him 24/7.

6        THE CLERK:  Calendar number 32, case number 08-
7    76561, Elemco Testing Company, Inc.

8        THE COURT:  We'll take appearances, please, first in
9    the courtroom.

10       MS. CVEK:  Good morning, Judge.  Julie A. Cvek of
11   Rattet Pasternak & Gordon-Oliver for the debtor.

12       THE COURT:  So you think it's still morning too.

13       MS. CVEK:  Good afternoon, your Honor.

14       MR. DIMINO:  Good afternoon, Judge.  Alfred Dimino
15   from the Office of the U.S. Trustee.

16       MR. ROONEY:  Good afternoon, your Honor.
17   Christopher Rooney of Lally Mahon & Rooney, for the Electrical
18   Industry Board.

19       MS. PALMERI:  Good afternoon, your Honor.  Patricia
20   Palmeri, the Law Office of Richard Brook on behalf of Local 25
21   IBEW.

22       MS. CONNOLLY:  Good morning, your Honor.  Susan
23   Medeiros Connolly, Assistant Attorney General on behalf of the
24   State University of New York at Stony Brook.

1        THE COURT:  All right.  Then on the telephone.

2

3        MR. KAPLAN:  Good afternoon, your Honor.  Mitchell

4  Kaplan from Platzer, Swergold, counsel for the Creditors

5  Committee, and thank you very much for allowing me to appear

6  by telephone.

7        THE COURT:  All right.  Anyone else on the phone?

8        THE CLERK:  That's it.

9        THE COURT:  All right.  Then, Ms. Cvek, where are

10  we?

11        MS. CVEK:  Your Honor, I guess there's two matters

12  to discuss with respect to the case status.  If I can take the

13  matter of Stony Brook first?  Actually three matters.  I'll

14  take Stony Brook first.

15        THE COURT:  All right.

16        MS. CVEK:  We've continued to negotiate the terms of

17  a settlement stipulation, however, there has been some dispute

18  -- minor dispute between -- among the parties, namely the

19  Creditors Committee and Stony Brook with respect to certain

20  language, language freezing in the stipulation, so I have

21  drafted a stipulation that I've signed off on with Stony

22  Brook, and we'll be submitting it to your Honor for review and

23  approval, and I suspect that Creditors Committee will file an

24  objection, and we're going to ask your Honor to resolve the

terms of the stipulation just so that we can continue to move
this matter along.

The Stony Brook contract is a very valuable asset to
the estate, and we want to cap any losses the debtor may have
suffered from not being able to go forward on this contract
because the stipulation remains to be unexecuted.

THE COURT:  Just remind me, has the agreement in
principle with Stony Brook been approved, and now it's simply
a question of the form of the order?

MS. CVEK:  It's a question of the form of the order.
We're all in the same terms with respect to the concept.
There's just some very minor language that we just can't seem
to find common ground on.

THE COURT:  And in terms of trying to save the
parties some cost and expense, Ms. Cvek, when you and Ms.
Connolly -- I forgot the first hyphenated part.

MS. CONNOLLY:  Connolly is fine, your Honor.

THE COURT:  All right.  When you and Ms. Connolly
have agreed to the form, if you'll upload that, e-mail it to
Mr. Kaplan.

Mr. Kaplan, if you'll then upload a competing form
and redline to the committee of Stony Brook form, then I'll
simply reconcile them and enter one order on the stipulation
so that they can move forward on that.

1         MR. KAPLAN:  Very well, your Honor.  Thank you.

2         MS. CVEK:  Very good, your Honor.  Would the debtor

3 still have to seek approval of the stipulation pursuant to

4 9019?

5         THE COURT:  Well, that was the part of my original

6 question.  I've lost track of whether or not we've already had

7 a hearing on approval.

8         MS. CVEK:  I believe at the last hearing, your

9 Honor, you authorized the debtor to seek approval pursuant to

10 Rule 9019 on an expedited basis, but I don't believe your

11 Honor made any findings with respect to the settlement being

12 in the best interest of the debtor's estate and above the

13 lowest point of reasonableness.

14         THE COURT:  All right.

15         MS. CVEK:  So I -- what I was hoping to do is just

16 file my 9019 motion, and then perhaps Mr. Kaplan can file his

17 competing stipulation.

18         THE COURT:  I think we probably though need to go

19 ahead and notice it out for hearing.  You could notice it by

20 presentment, and if there's no objection during the

21 presentment period, then the Court will go to the competing

22 forms of order.  I don't know that -- it doesn't sound -- this

23 case has been very -- many constituencies have appeared in a

24 number of cases, so the case is not under-represented as far

1  as different constituencies being heard.

2       So if there's no objection to the general principle

3  of the settlement, but there are some languaging issues in the

4  stipulation, then go ahead and notice out the proposed

5  agreement by presentment under 9019, and then again, once that

6  period has percolated, there's no objection, if you all still

7  have disagreements about the form of the order, then I'll have

8  you upload yours and Mr. Kaplan will upload his, and then I'll

9  reconcile them, but I want to make sure we've had the

10  predicate of creditor notice.

11       With respect to the shortening of time, typically we

12  can hear it on 13 days, so I'll shorten the presentment period

13  to 13 days.  As far as limiting notice, Mr. Kaplan, would the

14  committee have any objection to limiting notice of the

15  proposed settlement to the appearance parties in the case and

16  the United States Trustee?

17       MR. KAPLAN:  No objection, your Honor.

18       THE COURT:  Mr. Dimino?

19       MR. DIMINO:  Judge, I have no objection to that.

20       THE COURT:  All right.  And that will include notice

21  to each of the unions and the Electrical Board who have

22  appeared in the case.  So the Court will -- I will need for

23  you when you file the motion to include a request for this

24  relief.  I don't typically like to grant relief on motions

that have not been filed, but to keep the case moving if you'll file a motion seeking to shorten the presentment period and limit the notice, then I will enter an order limiting notice to appearance parties in the case and the United States Trustee, shortening the presentment period to 13 days, and then again, once that period has run if there's no objection on the merits or the settlement the Court will then reconcile the competing forms of order.

MS. CVEK:  Thank you very much, Judge.

Your Honor, the next matter pertaining to case status deals with Local 25 and the letter of credit.  We have made progress towards delivering that letter of credit. Unfortunately, once the letter of credit was obtained from the bank and delivered to the EIB, upon review it appears as though the letter of credit was erroneously made to the benefit of Utica, which is the debtor's pre-petition bonding company.  So that original letter of credit is in the process of making its way back to Suffolk County National Bank so a new, corrected letter of credit made to the benefit of the Electrical Industry Board can be issued and delivered back to the Electrical Industry Board care of their counsel.

I understand that the letter -- the erroneous letter of credit is still in transit from the Electrical Industry Board back to the debtor.  So the debtor can at that point go

1 to Suffolk County Bank, get a new letter of credit, and

2 deliver it back to the EIB.  Hopefully this will all be turned

3 around in the next week.  We were --

4          THE COURT:  That would explain --

5          MS. CVEK:  -- almost there.

6          THE COURT:  -- why the bank is not here today.

7          MS. CVEK:  I think it was just an oversight, your

8 Honor, but hopefully this will all be turned around within the

9 next week.  We were almost there.

10          MR. ROONEY:  Your Honor, if I may, we'd like to have

11 a deadline on that.  It took them two months to deliver it

12 after your Honor's order the first time.

13          THE COURT:  Well, I'm afraid if we hurry them

14 anymore it may come back wrong again, but I can set a deadline

15 to do that.  If I set the deadline on the debtor to do it

16 though, they're not the ones issuing the letter of credit.  I

17 could not really imagine at this point why it would take more

18 than another 20 days for the bank to turn the letter of credit

19 back around.

20          So perhaps the thing to do, Mr. Rooney, is if you

21 all have not received the letter of credit within 20 days,

22 then for you all to come in and ask the Court for expedited

23 relief, but I don't want to at that point punish the wrong

24 person.  So if there's any problem with that letter of credit

being reissued in 20 days, then I'll hear from you on that,

but that should be on notice to the debtor and Suffolk County

Bank --

        MR. ROONEY:  And the bank.

        THE COURT:  -- because we can yell at the debtor and

tell them to do it faster, but they're not -- they don't

appear to be the holdup at this point.

        MR. ROONEY:  Yes, your Honor.  Thank you.

        THE COURT:  All right.  And if you would communicate

that to Suffolk County Bank that they need to get their best

typist on it?

        MS. CVEK:  Very good, your Honor.  I absolutely

will, and I believe that brings us to the last matter on

status, which is the debtor's plan outline which was filed

with the Court last week on September 16th.

        Your Honor, the debtor's plan looks to fund a plan

through two sources of income.  One is from a cash infusion

from the debtor's principal, and the second is from ongoing

operations.  The debtor forecasts that from its projected

operations going forward that it will have sufficient monies

to make Chapter 11 plan payments to its unsecured creditor

body.

        With respect to the amount required on the

confirmation date, that is a significantly bigger amount, so

1   we will -- the debtor will need a cash infusion, and to that

2   extent the debtor's principal will be repurchasing in essence

3   his shares of the debtor so that they'll be canceled and then

4   reissued to the plan contributor in consideration for the cash

5   infusion required to confirm the plan.

6           The plan outline has been reviewed by the Creditors

7   Committee.  They have contacted us noting several concerns and

8   suggestions as to what they would like to see in the plan.  My

9   office has preliminarily reviewed it.  I just went over it

10  with the debtor's principal, and I'm hoping that within the

11  next week we can have a conference call with the committee to

12  formulate an outline that the committee is on board with that

13  we can file a plan and disclosure statement that has the

14  committee's support.

15          THE COURT:  So measuring the time line from where we

16  are today forward, some time in probably mid-November the

17  debtor should be ready for a hearing on a disclosure

18  statement?

19          MS. CVEK:  I would say so.  I would say that there's

20  -- I believe it's a 25 or a 30-day hearing on a disclosure

21  statement, so if we file it by -- within the first two weeks

22  of October at the very latest that would be a fair time line.

23          THE COURT:  All right.  Well, while we're taking

24  comments we'll surf for a hearing time in mid-November.  I

know the closer we get to the Thanksgiving holidays we start
getting into people's travel plans, so we'll avoid that, but
if we can I think it would be helpful to avoid spilling into
December.  So we'll try to find calendar time in early to mid-
November.

Anything else from the debtor on status -- debtors?

MS. CVEK:  The debtors have just continued in their
operations, your Honor, continued filing their monthly
operating reports.  At the last hearing I believe Mr. Dimino
noted to the Court that they had been delinquent on their
Trustee's fees.  Actually, it was sort of a -- it was crossed
in the mail.  The debtor had sent out those payments several
days before so that they were in the transit to the Trustee's
Office, and they just had not been processed.

The debtor is current in its operating report.  It's
current on the Trustee's fees, and I believe it's current
post-petition to the union as well as to its other
administrative expenses except for professional fees, which
are still allowed, but not authorized on an interim basis.

THE COURT:  All right.  Thank you.

Mr. Dimino.

MR. DIMINO:  Judge, as indicated, the debtor has
filed the August reports.  They appear to show a profit.  They
appear to show that debtor is current in its post-petition

administrative expenses.  The debtor is current or the debtors

are current on the payment of quarterly fees.

I reviewed the debtors' outline with regard to the

plan.  I did have an opportunity to speak with Ms. Cvek just

before the hearing.  I did indicate that one of the issues --

there's a number of issues they're going to have to deal with

in terms of the claims that have been filed.  Specifically,

the largest one is Utica.  They filed an $8.2 million claim in

each of the three cases.  That has to be resolved because if

you look at the outline there is no indication that there

would be that large a claim in any class that's listed.

There are some other claims issues that the debtors

are going to have to deal with, and at that point I'm assuming

we'll be seeing the disclosure statement and we can go from

there.

THE COURT:  Yes, but a sense at this point of -- is

it too early to have a sense of confirmability or whether this

is a case that we should pre-try confirmability before we go

into the cost of the solicitation process?

MR. DIMINO:  Judge, I think that maybe -- this may

be the -- the committee may be better at answering that

question.  I have reviewed the operating reports.  I haven't

been able to get a sense yet or do the analysis of whether or

not I think there's any issue with confirmability.  Again, I

just looked at -- until all the issues with the credit -- with

the filed claims are dealt with, I don't know whether or not

these numbers will be approximate numbers or even close.

Assuming that there's no issue with Utica, the

numbers appear to be generally in the vicinity that I've been

able to estimate, and then I'd have to sit down and look at

the operating reports to see how much cash the debtors are

producing on average on a monthly basis to determine whether

or not plan payments fall within that historical cash flow.

THE COURT:  Very well.  Thank you.

Mr. Kaplan.

MR. KAPLAN:  Thank you, your Honor.  My office is

continuing to work with debtors' counsel in trying to come up

with a consensual plan.  As Ms. Cvek indicated, she filed a

plan outline with the Court.  The committee has had a counter-

proposal with that, and we're expected to have a call together

next week to come over, to go over some of the details, and at

that point we may have a better idea as to confirmability of

the plan, but I think it's a little bit premature at this

point until we really go through the nuts and bolts with them

to make a determination on that.

THE COURT:  All right.  Thank you.

Mr. Rooney.

MR. ROONEY:  Yes, your Honor.  I'm about to throw a

1 monkey wrench into the nuts and bolts of the plan outline.  To

2 the extent that it relies on a cash infusion from the debtors'

3 principal in the amount of some $395,000, EIB has an

4 outstanding judgment against that principal personally in the

5 amount of 450,000.

6          Even if you take out the 250,000 that the Utica has

7 said they will pay some time, some day, that leaves 200,000

8 that EIB has a lien on in terms of the debtor -- the principal

9 of the debtor.

10          THE COURT:  I think I've got the players on the

11 scorecard right, so you're --

12          MR. ROONEY:  Robert White.

13          THE COURT:  -- the Electric Industry Board --

14          MR. ROONEY:  Right.

15          THE COURT:  -- has a judgment personally against the

16 principal of the debtor.

17          MR. ROONEY:  Right.

18          THE COURT:  And has liened his assets or just has a

19 recorded judgment?

20          MR. ROONEY:  It has a recorded judgment with a lien

21 against personal assets, and he has a restraining notice

22 served upon him which would limit his ability to pay cash.

23          THE COURT:  So I think you have found your new

24 shareholder, Ms. Cvek.

1      All right.  Well, we'll have to look at those issues
2  in due course, and I appreciate you bringing that to the
3  Court's attention.  In some of the, and don't take this word
4  out of context, in some of the smaller Chapter 11  cases, we
5  typically have a concern for the administrative burden of the
6  case.   If there -- and I've expressed that in this case in
7  prior occasions.  If there's -- the cost of going into the
8  process of seeking confirmation of a plan is an inherently
9  expensive process, and in some cases I've conducted
10 essentially a mini-trial or a mini-hearing on confirmability
11 before the debtor incur -- the debtors incur the expense of a
12 confirmation process and before the parties were put to that
13 burden.
14      It sounded from Ms. Cvek's comments that part of the
15 issue here to confirm a plan is not necessarily the monthly
16 profitability of the debtor to go forward, but the ability of
17 the debtors to obtain the come-out money, if you will, the
18 funds necessary to be paid on the effective date, thus the
19 recourse to the principal of the debtor to put that money in.
20      If the availability of those funds is a linchpin to
21 confirmation, and if your client claims first dibs, if you
22 will, on those monies, then it would seem to the Court that
23 perhaps we should have a hearing early on before you go into
24 the solicitation process on the ability of the debtors to

essentially a Rule 3020 hearing to determine whether or not the debtors can make the confirmation deposit in advance of the confirmation hearing.

I'm all for the debtors emerging from Chapter 11, these or any others, but I don't want to get to the confirmation hearing with all the cost and work that that entails, and then find out that the only problem with consummation of the plan is that one of the creditors has a claim on the personal guarantor's money or some other recourse ahead of the bankruptcy estate to the funds necessary to obtain confirmation. So I think we ought to visit that issue first.

Ms. Cvek, I'm not determining that EIB has a valid lien on anybody for anything, but as it's stated it's a fairly significant issue. So perhaps we ought to explore it before the cost of the confirmation solicitation process are borne.

Ms. Palmeri.

MS. PALMERI: Your Honor, I certainly concur with counsel for EIB, and while Local 25, my client, is not personally owed the funds, those funds are owed on behalf of its members, and even if, as Mr. Rooney had expressed, the Utica bond is paid, that is still only 250,000 of an almost half a million dollar contribution that had been owed, and from my understanding of the state court lawsuit based on Mr.

White's personal guarantees, any cash infusion that he would

give would necessarily come out of anything that should be

going to the EIB Funds on behalf of Local 25's membership.

THE COURT: Ms. Connolly.

MS. CONNOLLY: I have no comments.

THE COURT: All right. Then what I'll do is I'm

going to allocate you docket time on November 16th at 11:00

a.m. I know some of you come from distance, so I'll set you

down for November 16th at 11:00 a.m. For our carrying purpose

I'm going to treat that as the adjourned general case status

conference. For docketing purposes though, if the debtor has

its full plan and disclosure statement filed by then, we can

use that as a hearing on the disclosure statement. That tends

to be a less expensive part of the process than the

confirmation.

To the extent that any of the parties want to bring,

I believe it's Rule 3020, to bring a motion on to essentially

test the ability of the debtor to make the deposit required at

the time of confirmation, it would seem to the Court better to

test that at the disclosure statement hearing than later on at

the confirmation hearing itself.

I'm happy to be talked out of setting the hearing on

the disclosure statement for that time, but it would seem the

best way to keep the process going, and given that the

disclosure statement typically draws less fire than the plan

itself, that may be the better way to proceed.

Ms. Cvek?

MS. CVEK:  I agree, your Honor.  That's acceptable

to the debtor.

THE COURT:  Mr. Dimino?

MR. DIMINO:  Judge, it seems like a reasonable way

to deal with the issues.

THE COURT:  All right.  Any other party then?  Mr.

Kaplan or any party in the courtroom?

MR. KAPLAN:  I think the Court's proposal is the

best way to go, your Honor.

THE COURT:  All right.  Then we'll proceed in that

fashion, and the general case status will be adjourned to

November the 16th at 11:00 o'clock.  The debtors will need to

give notice to appearance parties of that adjourned hearing

date and time.

The debtors' disclosure statement can also be

noticed for November 16.  Different judges vary on whether the

notice period is 25 days or 25 plus three days for mailing, so

let's err on the side of 28 days for the notice of the hearing

on the disclosure statement to go out.  When the disclosure

statement and plan are filed, if Ms. Cvek, if you will e-mail

a proposed form of order setting the hearing on the disclosure

statement and the objection deadline, typically I would have

objections to the disclosure statement due seven days prior to

the hearing so that you know what additional disclosure, if

any, the parties are requesting, and then we'll hear the

matter on November 16th at 11:00 o'clock.

Again, it's the Court's purpose to treat that also

as in effect a mini-trial on confirmation. From what's been

announced thus far, that issue sounds to be limited to the

debtors' ability to make the effective date deposit. That

will need to be teed up by motion.

So Mr. Rooney, since that seemed to have been your

monkey wrench, I'll put the onus on you to file the motion.

You can set it for November 16th at 11:00 to essentially test

the ability of the debtor to make the effective date deposit.

MR. ROONEY: Okay.

THE COURT: All right.

MR. ROONEY: Thank you, your Honor.

THE COURT: Anything else for today on the Elemco

matters?

MS. CVEK: Your Honor, if I could just bring up one

other administrative matter relating to payment of allowed

professional fees? At the last hearing your Honor authorized

I believe it was $6,000 of professional fees to be paid four

ways essentially; to debtors' counsel, debtors' accountant,

committee counsel, and committee's financial advisors, and
that will be distributed once the letter of credit is
delivered, the proper corrected letter of credit is delivered
to the EIB.

However, I would like to request authority to have
additional fees paid at that November 16th hearing.  It's my
understanding from the debtor that there is significant cash
available in its bank accounts to make that payment, and your
Honor, the professionals have been patient and we think that
if we can prevail at this point on having more fees paid, that
would be greatly appreciated by our firm and I'm sure the
other professionals as well.

THE COURT:  Well, there's no better time than the
beginning of the holiday season than to ask for fees, so it
has been -- the Court's practice on this had been, as Ms. Cvek
indicated, as funds were available to allow the professionals
to seek further payment on interim fees allowed, so you can
certainly November 16th to notice that request as well.

If it appears that there are available funds in
excess of the unpaid portion of the thus far allowed interim
fees, I'll also allow the parties to bring on supplemental
requests for interim fees.  It's been now I believe more than
120 days since the last allowance of interim fees, so that
would be the appropriate time to bring that back to the

1 Court's attention.  So further fee requests will be considered

2 on proper notice on November 16th at 11:00 o'clock.

3          MS. CVEK:  Thank you very much, Judge.

4          THE COURT:  All right.  Very well.  Then anything

5 else for this afternoon?

6          MR. DIMINO:  No, Judge.

7          THE COURT:  All right.  Then we will see you all

8 back on November the 16th at 11:00 o'clock.

9          If there is any objection on the settlement motion,

10 then we'll bring you all in on that on -- as quickly as we

11 can.  I know that the State University is probably anxious to

12 have that matter finally put to bed, as is the debtor.  So if

13 there's an objection we'll get you in on an as expedited a

14 basis as we can, but again, it sounds that it will be an

15 iterative process of how the order ought to read than as to

16 whether or not the settlement should be approved.

17          MS. CVEK:  Correct, your Honor.

18          THE COURT:  All right.  Very well.  Then we'll be

19 adjourned on the Elemco cases.  We'll go off the record.

20

21

22

23                    *          *          *

24

25                         **CERTIFICATION**

I, Catherine Aldrich, certify that the foregoing is a correct
transcript from the electronic sound recordings of the
proceedings in the above-entitled matter.

_____          October 1, 2009
          Catherine Aldrich